PAUL J. BEARD II (State Bar No. 210563)
FISHERBROYLES LLP
4470 W. Sunset Blvd., Suite 93165
Los Angeles, CA 90027
Telephone: (818) 216-3988
Facsimile: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

Attorneys for Plaintiffs
THE SANTA BARBARA APARTMENT ASSOCIATION, INC.
dba SANTA BARBARA RENTAL PROPERTY ASSOCIATION &
NOGORA, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SANTA BARBARA APARTMENT ASSOCIATION, INC. dba SANTA BARBARA RENTAL PROPERTY ASSOCIATION and NOGORA, LLC,<br><br>Plaintiffs<br><br>v.<br><br>CITY OF SANTA BARBARA; CITY COUNCIL of the CITY OF SANTA BARBARA; ARIEL CALONNE, in his official capacity as CITY ATTORNEY for the CITY OF SANTA BARBARA; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: _____<br><br>**FEDERAL CIVIL RIGHTS COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**<br><br>**[42 U.S.C. § 1983; Cal. Civ. Proc. Code § 1085]** |

1
COMPLAINT

**INTRODUCTION**

1.     This is a challenge to an ordinance and resolution (collectively, the "Relocation Payment Law") enacted by Defendant City of Santa Barbara ("City"),[1] which together compel rental housing owners to pay off tenants, whether wealthy or in need, an extraordinary ***three times the monthly rent*** just for the right to repossess their properties. As detailed below, the Relocation Payment Law—a permanent mandate with no sunsetting provision—violates housing owners' federal constitutional rights.

2.     The Relocation Payment Law violates the United States Constitution's prohibition on government impairment of leases and rental agreements, none of which provide for payment of relocation costs to tenants. The Relocation Payment Law also violates owners' right to be free from unconstitutional takings of private property under the Fifth Amendment, and unlawful seizures of the same under the Fourth Amendment. Further, the law is the product of utterly arbitrary and capricious decision-making by the City Council that adopted it: After commissioning a "nexus study" to justify a relocation payment amount, the City Council rejected the study—because the recommended amount was too low—and plucked out of thin air an amount equal to "three times the rent."

3.     Plaintiff The Santa Barbara Apartment Association, Inc., dba Santa Barbara Rental Property Association is an association whose members are individual rental housing owners. Many have been burdened and continue to be burdened by the Relocation Payment Law, which has compelled them to transfer significant sums of money to tenants simply for exercising the right to repossess their units. One such member is Nogora, LLC—owned by a small mom-and-pop landlord—who was forced to pay three times the monthly rent to tenants who simply moved from one unit in a duplex to the other, just so the landlord could perform necessary sewer and plumbing work.

4.     Plaintiffs seek a declaration that the Relocation Payment Law is unconstitutional, facially and as applied, as well as an injunction prohibiting its enforcement under 42 U.S.C. section 1983; in the alternative, they seek a writ of mandamus to the same effect, under California Code of Civil Procedure section 1085. Plaintiffs also seek nominal damages for the federal constitutional violations perpetrated by the City by way of enactment and enforcement of the Relocation Payment Law, as well as their attorneys'

---

[1] All reference to the "City of Santa Barbara" include all named Defendants.

fees and costs under 42 U.S.C. section 1988.

5.      In addition, Plaintiff Nogora, LLC seeks just compensation from the City for being forced to make a massive relocation payment to tenants for the right to repossess its unit for repairs.

### JURISDICTION AND VENUE

6.      This action is brought pursuant to 42 U.S.C. § 1983, based on Defendants' deprivation of the constitutional rights of Plaintiffs under Article I, Section 10, Clause 1 of the United States Constitution, as well as under the Fourth, Fifth and Fourteenth Amendments to the same. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested declaratory and injunctive relief, and damages, pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 1343(a), and 42 U.S.C. § 1983, and to award attorneys' fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1988. The Court has pendent jurisdiction over the California claim under 28 U.S.C. section 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Defendants are located within this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

### PARTIES

8.      Founded in 1977, Plaintiff The Santa Barbara Apartment Association, Inc., dba Santa Barbara Rental Property Association (SBRPA) is one of Central California's leading trade associations. The Association is a 501(c)6 non-profit organization serving the needs of the rental housing industry in Santa Barbara County. The over-1,000 dues-paying members of SBRPA are individuals and companies who own, manage or provide products and services to more than 23,000 residential rental units, representing a significant portion of Santa Barbara's rental housing stock. SBRPA's owner-members with nonexempt properties in the City have been compelled by the Relocation Payment Law to make substantial relocation payments to tenants for the right to reclaim their units for so-called "no fault, just cause" repossessions. SBRPA brings this challenge on behalf of itself and its affected owner-members to vindicate their federal civil rights under 42 U.S.C. § 1983.

9.      One such SBRPA member is Teresa Patiño. Ms. Patiño is a small landlord who, through Plaintiff Nogora LLC (of which she is the sole member), owns a duplex in the City that is subject to the Relocation Payment Law. As detailed below, in April 2021, Ms. Patiño was compelled by the Relocation

Payment Law to make a relocation payment of $7,800 to tenants, who moved from Unit A of the duplex to Unit B so that Ms. Patiño could substantially replace and modify Unit A's plumbing and sewer line system. The payment represented three times the tenants' monthly rent. But for the law, she would not have had to make, and would not have made, the relocation payment.

10.     Defendant City of Santa Barbara is a municipal corporation, and can sue and be sued.

11.     Defendant City Council of the City of Santa Barbara is the City's governing legislative body and enacted the Relocation Payment Law.

12.     Defendant Ariel Calonne is the City Attorney for the City of Santa Barbara and has the power and duty to enforce the Relocation Payment Law. Mr. Calonne is sued in his official capacity.

13.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20 and therefore sue Defendants by such fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants is in some manner responsible or liable for the events and happenings referred to herein, and that each such fictitiously named Defendant caused injury and damage to Plaintiffs as alleged in this Complaint. Plaintiffs will amend or seek leave of court to amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when the same are ascertained.

14.     Plaintiffs are informed and believe, and thereon allege, that at all relevant times each of the Defendants was the agent of each of the remaining Defendants and, in doing the things hereinafter alleged, was acting within the course and scope of such agency or employment.

**FACTUAL ALLEGATIONS**

15.     On December 8, 2020, the City Council passed by a narrow 4-to-3 vote Ordinance No. 5979. The Ordinance amended the Santa Barbara Municipal Code ("Municipal Code") by adding Chapter 26.50 pertaining to "just cause" for residential evictions. A true and correct copy of Ordinance No. 5979 is attached hereto as Exhibit A and incorporated herein by reference. The Ordinance took effect on January 8, 2021.

16.     The Ordinance mandates, in relevant part, that "[t]he owner of a rental unit who issues a termination notice based upon no-fault just cause shall make a relocation assistance payment to each qualified tenant in an amount established by resolution of the City Council, or one month's rent plus one

4
COMPLAINT

dollar, whichever is greater." Municipal Code § 26.50.20(A). A "qualified tenant" is defined as "a tenant who has continuously and lawfully occupied a rental unit for 12 months."

17.    The relocation payment requirement applies to rental housing in the City with limited exceptions. *Id.* § 26.50.

18.    The Ordinance distinguishes between "at fault" just cause and "no fault" just cause. "No fault" just cause is: "a. Intent to occupy the rental unit by the owner or their spouse, domestic partner, children, grandchildren, parents, or grandparents if a provision of the lease allows the owner to terminate the lease when the owner, or their spouse, domestic partners, children, grandchildren, parents, or grandparents, unilaterally decides to occupy the rental unit. b. Withdrawal of the rental unit from the rental market. c. The owner complying with any of the following: i. An order issued by a governmental agency or court relating to habitability that necessitates vacating the rental unit. ii. An order issued by a government agency or court to vacate the rental unit. iii. A local ordinance that necessitates vacating the rental unit. d. Intent to totally demolish or to substantially remodel the rental unit."

19.    On December 8, 2020, the City Council passed, by another narrow 4-3 vote, Resolution No. 20-084. The Resolution set the relocation payment amount equal to "3.0 months of the rent that was in effect when the owner issued the notice to terminate the tenancy." A true and correct copy of the Resolution is attached hereto as Exhibit B and incorporated herein by reference.

20.    The relocation payment amount was selected arbitrarily. While the City Council did pay a significant sum of money to a real estate advisory firm, Keyser Marston Associates, Inc. ("KMA"), to prepare a nexus study, the City Council rejected it because the study's recommended relocation payment amount was not high enough. A true and correct copy of the nexus study is attached hereto as Exhibit C and incorporated herein by reference. Instead, a bare majority of Council members arbitrarily imposed its own amount of ***three times*** the monthly rent, in wanton and reckless disregard of rental housing owners' constitutionally protected rights. The relocation amount was not based on any legitimate nexus study establishing the actual cost of relocation.

21.    A tenant of any means can potentially qualify for a relocation payment. The Relocation Payment Law contains no "means testing" to ensure that only tenants in actual need of assistance with relocation are entitled to the relocation payment. Thus, there is nothing in the law to prevent a small

landlord of relatively modest means from being compelled to make a relocation payment to a comparatively wealthy tenant who has no need for anyone to subsidize his or her relocation expenses.

22. The Relocation Payment Law confers an exclusively private benefit on private individuals (tenants). Further, the law does not require that a relocation payment be used for relocation. The relocation payment can be used for any private purpose the tenant desires.

23. Remedies for violation of the Relocation Payment Law are severe. Failure to make the required relocation payment in a timely manner is a defense to any unlawful detainer action. Further, any violation of the Chapter, including the relocation payment requirement, entitles the aggrieved tenant to actual damages, as well as attorneys' fees and costs. The City Attorney is also authorized to enforce the Chapter through administrative, civil, and even criminal action. Finally, the City Attorney is authorized to bring actions for injunctive relief against offending owners, as well as for the City's costs, expenses, and attorneys' fees.

24. Some members of SBRPA are owners of nonexempt rental units in the City and have been subjected to the Relocation Payment Law. They have been compelled to pay three times monthly rent to tenants following "no fault" evictions. They have done so against their will and in violation of their federal constitutional rights.

25. An example is Nogora LLC, which owns a duplex in the City. In early 2021, significant plumbing and sewer issues forced Nogora to have to perform substantial modifications to those systems in one of the units—namely, Unit A, a tenancy in existence prior to the Relocation Payment Law. That work required the tenants in Unit A, who were renting on a month-to-month basis, to move themselves and their belongings into Unit B. The tenants performed the next-door move themselves, without having to hire any professional movers. Tenants had no relocation costs. Nevertheless, under the Relocation Payment Law, Nogora was forced to pay the tenants three times the tenants' monthly rent, or $7,800. The unexpected payment imposed a substantial financial hardship on Nogora's manager member, Teresa Patiño, who is a small, mom-and-pop landlord struggling to keep her rental housing business afloat while providing superior service to her tenants.

26. She and other owner-members of SBRPA face the continued threat of having to pay, on pain of serious penalties and damages, substantial sums of money to tenants for the right to reclaim their

units for so-called "no fault, just cause" repossessions. The Relocation Payment Law's existence on the books means that those members, such as Nogora, must financially plan *today* for the eventuality of making significant relocation payments in the future.

### FIRST CLAIM

**Facial and As-Applied Violation of the Contracts Clause**
**(U.S. Const. art. I, § 10, cl. 1; 42 U.S.C. § 1983)**
**(By All Plaintiffs Against All Defendants)**

27.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

28.     The Contracts Clause of the United States Constitution prohibits local governments from passing "any . . . Law impairing the Obligation of Contracts." (U.S. Const., Art. I, §10, cl. 1). To determine whether a law violates the Contracts Clause, a court engages in a two-step inquiry. *Sveen v. Melin*, 138 S. Ct. 1815, 1821-22 (2018). First, a court will determine whether the law "operate[s] as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822. Second, the court considers "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Sveen*, 138 S. Ct. at 1822 (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-412 (1983). Importantly, a law fails at the second step unless the contractual impairment it causes "was necessary to meet an important general social problem." *Allied Structural*, 438 U.S. at 247.

29.     Not one lease executed by an SBRPA member owning a nonexempt rental housing unit with a qualified tenant, including Plaintiff Nogora's leases, contains any provision for a relocation payment upon repossession, let alone one in the amount of three times the monthly rent or one that includes payment of the tenant's future security deposit. To the contrary, owners including Nogora reasonably expected and continue to expect they will be able to lawfully repossess their units without having to make a substantial relocation payment of any kind or amount. Yet the Relocation Payment Law undermines those reasonable expectations and rewrites their existing leases.

30.     The City cannot stablish that the Relocation Payment Law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose. Among other things, the law serves the purely private interests of a discrete class of private individuals, not a public purpose. In this case of Nogora, the law required her to transfer a substantial sum of money to private tenants who had no relocation costs and simply moved from one of unit in her duplex to the other unit. Moreover, the law exacts an arbitrary amount of money from rental housing owners, including Nogora, without any basis in a legitimate nexus study, and transfers the funds to tenants irrespective of tenants' needs or of the private use to which the funds are put.

31.     As a consequence, the Relocation Payment Law impairs existing contracts, including specifically Nogora's lease contract, in violation of the Contracts Clause.

## SECOND CLAIM

**Facial and As-Applied Violation of the Takings Clause of the United States Constitution**
**(U.S. Const. amends. V, XIV; 42 U.S.C. § 1983)**
**(By Plaintiff Nogora, LLC Against All Defendants)**

32.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein

33.     The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the government from taking private property unless (a) it is for a "public use" and (b) "just compensation" is paid to the owner. U.S. Const. amend. V, XIV; s*ee also Brown v. Legal Foundation of Washington*, 538 U.S. 216, 231-32 (2003) (underscoring the Takings Clause's two separate requirements). The Takings Clause was enshrined in the Constitution so that the government is prohibited from "forc[ing] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

34.     If the government "fails to meet the 'public use' requirement," then "that is the end of the inquiry," and "[n]o amount of compensation can authorize such action." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005). A government taking of property for a private use or purpose is categorically barred. As the United States Supreme Court has explained, "it has long been accepted that the sovereign" (i.e., the government) "may not take the property of A for the sole purpose of transferring it to B." *Kelo v. City of New London*, 545 U.S. 469, 477 (2005); *Calder v. Bull*, 3 U.S. 386 (1798) (holding that "[i]t is against

all reason and justice" to presume that the legislature has been entrusted with the power to enact "a law that takes property from A and gives it to B").

35.    "Nor would the [government] be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Kelo*, 545 U.S. at 478 (emphasis added). If a taking is designed simply "to benefit a particular class of identifiable individuals," then the taking is not for a "public use" consistent with the Public Use Clause, and is therefore unconstitutional. *Id.* Significantly, takings with only an "incidental" public benefit "are forbidden by the Public Use Clause." *Id.* at 490 (Kennedy, J., concurring); *see also Loretto v. Teleprompter Manhattan Catv Corp.*, 458 U.S. 419 (1982) (holding that a "taking" under the Takings Clause occurs even when, under the authority of law, "a stranger directly invades and occupies the owner's property" and does not pass to or through the government's hands).

36.    The Takings Clause applies to monetary confiscations that operate on an identified property interest, as well. The United States Supreme Court's seminal decision in *Koontz v. St. Johns River Water Mngmt. Dist.*, 570 U.S. 595, 615 (2013) leaves no room for doubt that a government-compelled financial obligation tied to the ownership of real property effects a *per se*, physical taking of property under the Takings Clause. As the High Court explained, when "the demand for money . . . operate[s] upon . . . an identified property interest by directing the owner of a particular piece of property to make a monetary payment," it results in a per se taking. *Koontz*, 570 U.S. at 613; *see also Horne v. Dept. of Agriculture*, 576 U.S. 351, 357-58 (2015) (holding that the Takings Clause may protect against confiscation of a sum of money). "[W]hen the government commands the relinquishment of funds linked to a specific, identifiable property interest such as a bank account or parcel of real property, a 'per se [takings] approach' is the proper mode of analysis under the Court's precedent." *Koontz*, 570 U.S. at 615 (internal citation omitted). It does not matter that the property at issue does not first pass through the government's hands. *Cedar Point Nursery Hassid*,  141 S. Ct. 2063 (2021) (holding that a California regulation granting third parties—labor organizations—right to take access to an agricultural employer's property to support unionization constituted a *per se* physical taking).

37.    A law can also effect a *regulatory* taking of property under the balancing test set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). Under *Penn Central*, courts weigh "(1)

9
COMPLAINT

the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin* 137 S. Ct. 1933 (2017). The "character" factor considers whether the regulation reflects a "reciprocity of advantage" among affected individuals, whereby "[e]veryone loses [by the regulation] but everyone gains." Steven J. Eagle, *The Four-Factor Penn Central Regulatory Takings Test*, 118 Penn St. L. Rev. 601, 615 (2014).

38. Here, the Relocation Payment Law results in a *per se* taking because it commands the relinquishment of funds linked to a specific, identifiable property interest (the rental unit that the qualified tenant has leased) for transfer to a third party (the tenant). The payment is calculated based on the value of the tenant's leasehold interest—i.e., three month's rent. And the payment is mandated precisely because of the owner's disposition of his specific, identifiable real property. The link between the relocation payment mandate and a specific, identifiable property interest is indisputable, so the mandate effects a *per se* taking under *Koontz. See, e.g.*, *Levin v. City & County of San Francisco*, 71 F. Supp. 3d 1072 (N.D. Cal. 2014).

39. Specifically, Nogora suffered a *per se* taking, because the Relocation Payment Law compelled her to transfer funds tied to the rental value of her leasehold interest to tenants who moved from one unit in her duplex to another.

40. In the alternative, the Relocation Payment Law results in a regulatory taking under *Penn Central*. The law requires an owner to convey to a departing tenant of all (for month-to-month to three-month tenancies) or a significant part of a leasehold estate without compensation. No owner could reasonably have expected to have to convey such a property interest, either in law or in any existing lease, and the character of the mandate is such that it is entirely one-sided, benefitting one class of individuals (tenants) at the total expense of another class (owners). There is no reciprocity of advantage, but only a naked transfer of property rights from one group to another.

41. For example, Ms. Patiño had to make a $7,800 out-of-pocket payment to tenants—a substantial economic impact on her personal finances and her small rental housing business, which as a small landlord she is trying to keep afloat. Because she was renting her unit on a month-to-month basis, that translates into her having to convey her leasehold estate—three times over—without payment of

10
COMPLAINT

compensation. And the requirement grossly interfered with her distinct investment-backed expectations. Her lease did not provide for such a conveyance. Moreover, she acquired the rental and leased it to the tenants on the reasonable expectation that the government would not compel her to subsidize those tenants' relocation costs—even to move next door.

42. Whether a *per se* or regulatory taking, the relocation payment requirement violates the Public Use and Just Compensation Clauses and therefore is unconstitutional. As for the Public Use Clause, the City requires the payment of money from one relatively small class of private parties (rental housing owners) to "a particular class of identifiable individuals" (tenants). *Kelo*, 545 U.S. at 478. The relocation payment mandate undisputedly benefits that particular class of identifiable individuals. It allows members of that class to use the funds for any private purpose; the general public has no use or purpose for the funds. Indeed, the mandate operates without any claim to or evidence of a clear public benefit, and even an incidental public benefit would be legally insufficient to render the requirement consistent with the Public Use Clause. The requirement mandates a purely private taking for a private use—it "tak[es] the property of A for the sole purpose of transferring it to B"—and therefore violates the Public Use Clause. *Kelo*, 545 U.S. at 478.

43. The Relocation Payment Law also violates the Just Compensation Clause. The law contains no mechanism for compensating or otherwise mitigating for the mandate's financial impacts on rental housing owners, like Nogora. Absent such a mechanism for compensation or mitigation, the relocation payment mandate cannot stand for the independent reason that it violates the Just Compensation Clause.

## THIRD CLAIM

**Facial and As-Applied Violation of the Unconstitutional Conditions Doctrine
(U.S. Const. amends. V, XIV; 42 U.S.C. § 1983)
(By All Plaintiffs Against All Defendants)**

44. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

45. The Relocation Payment Law violates the federal "unconstitutional conditions" doctrine, as applied in the context of the Takings Clause.

46. Under that doctrine, the government may not condition an individual's rights on the relinquishment of property unless the government establishes an "essential nexus" and "rough

11
COMPLAINT

proportionality" between "the property that the government demands and the social costs of" exercising those rights. *Koontz*, 570 U.S. at 605-06; *see also Nollan*, 483 U.S. at 837 (requiring an "essential nexus" between the public impacts on beach access directly caused by a landowner's proposed use of his property, and the government's demand for an easement); *Dolan*, 512 U.S. at 386 (requiring "rough proportionality" between the public impacts of a landowner's proposed use of his land and the government's demand for an easement). If the government's demand for property fails either the nexus or rough-proportionality test, it is an unconstitutional taking of private property—or, in the words of the Supreme Court, an "out-and-out plan of extortion." *Nollan*, 483 U.S. at 837.

47.    Conditioning the right to lawfully repossess property on the relinquishment of funds linked to an identifiable property interest—here, relocation monies tied to a leasehold—bears no "essential nexus" to any public impacts caused by the owner. That makes the condition unconstitutional.

48.    First, an owner's decision to repossess his property from a tenant does not inflict on the tenant any costs that are not otherwise inherent in a leasehold. Having to one day move out of a rental and pay relocation costs is part and parcel of the limited duration of a leasehold, as contemplated by every rental agreement, and results from the decision to lease a home in the first place. *Avalon Pacific—Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC*, 192 Cal. App. 4th 1183, 1190 (2011) (discussing definition of a leasehold, which conveys a possessory interest in property "during the term of the lease"). While an owner's lawful repossession may affect the *timing* of a tenant's relocation expenditures, it is not the *cause* of such expenditures. *Levin*, 71 F. Supp. 3d at 1084-85 (finding that a variety of complex factors determines the conditions of the rental housing market and its effects on tenants); *Coyne v. City & County of San Francisco,* 9 Cal. App. 5th 1215, 1230 (2017) (finding that "spiraling rents had no relationship to the adverse impacts caused by a landlord's decision to exit the rental market").

49.    Second, even if it were fair to characterize lawful repossession of a unit as an owner causing adverse impacts on a tenant, those impacts would be private, not public. The government is entitled only to mitigate against "public impacts" caused by a property's use or disposition. *San Remo Hotel v. City & County of San Francisco*, 27 Cal. 4th 643, 671 (2002) (emphasis added). It is not entitled to mitigate against purely private ones.

50.    Finally, the relocation payment requirement fails to establish rough proportionality

12
COMPLAINT

between the mandated payment and even the private impact caused to tenants from repossession. *Dolan*, 512 U.S. 391 (holding that the burden is on the government to prove rough proportionality). That is because the required payment is based, not on actual relocation costs, but on an arbitrary number: "3.0 months of the rent that was in effect when the owner issued the notice to terminate the tenancy." *See* Resolution No. 20-084, § 3. KMA produced a nexus study commissioned by the City, but even the study failed to establish a roughly proportional relocation payment tethered to actual relocation costs. For example, the study included the security deposit that a tenant must make for future housing, even though that is not a "relocation" cost as section 1950.5 of the California Civil Code makes clear that all tenants are entitled to receive their security deposit returned promptly upon vacating with limited exceptions. *See also Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 746 (finding that "section 1950.5, subdivision (f), was enacted to ensure the speedy return of security deposits…and to prevent improper retention of such deposits"). In any event, even if the study were accurate, the City disregarded it and instead pulled a relocation payment number out of thin air because the study recommended too low a relocation payment. The City's relocation payment requirement falls far short of meeting the "rough proportionality" test.

51.     As applied to Nogora, the Relocation Payment Law compelled its owner, Ms. Patiño, to transfer three times the monthly rent, or $7,800, to tenants for the right of repossessing her property and moving them next door. This, despite the fact that the tenants incurred no relocation costs. The obligation bore no nexus or rough proportionality to any public or even private impacts of the repossession of her property.

52.     For these reasons, the Relocation Payment Law fails the "nexus" and "rough proportionality" tests of *Nollan* and *Dolan*, and therefore violates the unconstitutional conditions doctrine.

## FOURTH CLAIM
### Facial and As-Applied Violation of the Fourth Amendment (Unlawful Seizure)
### (U.S. Const. amends. IV, XIV; 42 U.S.C. § 1983)
### (By All Plaintiffs Against All Defendants)

53.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

54.     The Fourth Amendment, which bars unlawful seizures of property, applies in the civil context.

13
COMPLAINT

55.    Money is personal property protected from unreasonable seizure by the Fourth Amendment.

56.    The Relocation Payment Law requires owners who undertake a no-fault, just cause eviction to pay their tenants three times the monthly rent.

57.    The law imposes no conditions on tenants' use of the payment. The tenants need not use their payment for relocation or for rent or for any other particular purpose.

58.    The law is retroactive, obligating owners, including Nogora, to make a massive transfer of money to tenants, based on acts they took before the law ever required such a transfer.

59.    The law meaningfully interferes with owners', including Nogora's, possessory interest in their money and real property.

60.    The law unreasonably seizes property, and property owner by Nogora.

61.    The unreasonable seizure arising from the law occurred under color of state law and violates section 42 U.S.C. section 1983.

## FIFTH CLAIM
### Unlawful Relocation Payment Amount
### (Cal. Code of Civ. Proc. § 1085)
### (By All Plaintiffs Against All Defendants)

62.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

63.    A writ of ordinary mandamus lies to strike down a "quasi-legislative act" that is "arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair." *Am. Coatings Assn. v. S. Coast Air Quality Mgmt. Dist.*, 54 Cal. 4th 446, 460 (2012).

64.    The Relocation Payment Law's relocation payment amount is unlawful because it is arbitrary, capricious and/or entirely lacking in evidentiary support.

65.    The City commissioned and received a nexus study so that the City could justify a relocation payment amount. The study failed to establish a roughly proportional relocation payment tethered to tenants' actual relocation costs. For example, the study included the security deposit that a tenant must make for future housing, even though that is not a "relocation" cost. The city effectively discarded the study, not because the study *overestimated* relocation costs, but because the study

purportedly *underestimated* relocation costs. And, instead of trying to remedy the purported deficiency by commissioning a new nexus study, the city simply pulled a relocation payment number out of thin air: three times a displaced tenant's monthly rent. The number was not based on the study or any other evidence; rather, it was an arbitrary and capricious decision that led to a resolution establishing the relocation payment at 3 times the monthly rent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request relief as follows:

**As to the First, Second, Third, and Fourth Claims:**

1.    A declaratory judgment that the Relocation Payment Law is null and void, and of no effect, because it deprives rental housing owners, including Plaintiff Nogora, of the rights, privileges, and immunities secured by the United States Constitution, as follows:

      a.  It violates the Contracts Clause of Article I, section 10, clause 1, of the United States Constitution.

      b.  It effects an unconstitutional taking of private property, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

      c.  It effects an unconstitutional condition under the Takings Clause.

      d.  It effects an unconstitutional seizure under the Fourth Amendment.

2.    A temporary, preliminary, and permanent injunction enjoining Defendants, and all those in active concert or participation with them, from implementing or enforcing the Relocation Payment Law, or any substantially similar relocation payment requirement adopted, including against Plaintiff Nogora.

3.    Compensation and related damages Plaintiff Nogora in an amount to be determined at trial.

4.    Nominal damages to Plaintiffs, including Plaintiff Nogora, for violation of federal constitutional rights.

**As to the Fifth Claim:**

5.    A writ of mandamus ordering the City to rescind its resolution setting the relocation payment amount of three times the monthly rent.

**As to all Claims:**

6.    Plaintiffs' reasonable attorneys' fees and costs incurred in this action pursuant to, *inter*

*alia*, 42 U.S.C. section 1988.

7.    Any and all other relief to Plaintiffs as the Court may deem proper and just.

DATED: February 25, 2022                    s/ Paul Beard II

_____
Attorneys   for   Plaintiffs   THE   SANTA   BARBARA
APARTMENT ASSOCIATION dba SANTA BARBARA
RENTAL  PROPERTY  ASSOCIATION  and  NOGORA,
LLC

COMPLAINT